Filed 06/18/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington, VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-04839

| | |
|---|---|
| John Mills,<br>        Appellant,<br><br>        v.<br><br>Lawrence & Leclair, Inc. and City of<br>Burlington Housing Board of Review,<br>        Appellees. | On appeal from HRB-25-31<br><br>OPINION AND ORDER |

DECISION ON APPEAL

This administrative appeal of a decision by the City of Burlington Housing Board of Review (the "Board") involves the allocation of relocation expenses to be incurred by the Appellant/Tenant John Mills, whose relocation is required by the property owner's failure to maintain a Certificate of Compliance demonstrating that the rental unit occupied by Mills complies with the City's minimum housing standards. The Board held a hearing on September 8, 2025, and issued a decision on October 6, 2025, concluding that the relocation expenses should be split and borne equally by both Mills and the owner of the property, Lawrence & Leclair, Inc. Pursuant to Rule 74 of the Vermont Rules of Civil Procedure, Mills appeals, arguing that the Burlington Code of Ordinances ("B.C.O.") requires relocation expenses to be borne wholly by either the owner or by the tenant, and that the Board lacked the authority to split the costs between himself, as the tenant, and the owner.[1] For the following reasons, the Board's decision is AFFIRMED.

---

[1] Mills also filed a motion to strike the appellate brief filed by the owner (Mot. # 4) on the basis that it includes no legal argument or analysis, among other reasons. Mills does not specify the procedural basis for this motion, and it is not proper under Rule 12. *See* V.R.C.P. 12(f). Therefore, the motion is DENIED.

The Court notes, however, that Mr. LeClair continues to act as counsel for the corporate owner and has failed to comply with the Court's February 17, 2026 order that he seek permission to represent the corporation. *See, e.g.*, *Bandler v. Charter One Bank*, No. 2016-308, 2017 WL 1106269, at *3 (Vt. Mar. 24, 2017) (unpub. mem.) (nonattorney may not represent corporation without prior court approval) (cited pursuant to V.R.A.P. 33.1(d)). In addition, in his brief, Mr. LeClair alludes to facts that do not appear in the administrative record. Because Rule 74 appeals are based on the record before the administrative agency, no new facts may be introduced on appeal. For these reasons, the Court does not consider the brief filed by Mr. LeClair in deciding this case.

The parties do not contest the Board's factual findings made following the evidentiary hearing. The relevant findings of fact include the following. Lawrence & LeClair, Inc. is the owner of 54 Spruce Street (the "Property") and John Mills is the tenant living in one of the units there. Joe LeClair is a property manager of the building. The Property's Certificate of Compliance expired on March 9, 2023, and a Health & Housing inspector visited the Property in December 2024 after receiving complaints from a neighbor that some windows were broken in Mills' unit. The inspector confirmed the broken windows and scheduled a follow-up inspection in January. Mr. LeClair met the inspector at the meeting in January, and because the windows were still broken, a reinspection was scheduled for March 2025. Mr. LeClair did not show up at the reinspection in March, but the inspector observed that plexiglass had been installed as a temporary measure to secure the unit. Additional inspections were scheduled for April, May, and June, during which times additional deficiencies were noted, including the accumulation of trash and the expired Certificate of Compliance. The owner ignored correction orders issued by the Health & Housing inspector.

The City asked the Board to suspend the Certificate of Compliance for Mills' unit at the Property for one year unless an earlier inspection showed that the unit was safe for occupancy. The City asked that Mills be relocated and that the owner be ordered to pay one-half of Mills' relocation costs. The evidence was undisputed that Mills had broken one or more windows in his unit in 2023, which the owner replaced, and that Mills was responsible for breaking the windows that now needed replacement.[2] It was also undisputed that the owner refused to replace the windows that were currently broken.

The owner filed eviction proceedings against Mills in February 2025, but the eviction case was dismissed due to the owner's failure to correct pleading deficiencies. At the time of the hearing before the Board, Mills was still residing in the unit pursuant to a month-to-month tenancy.

The Board granted the City the relief it requested, suspending the Certificate of Compliance for Mills' unit at 54 Spruce Street until such time that the owner complied with the Board's order to replace the broken windows. The Board also ordered the owner to pay one-half of Mills' relocation costs, as the City requested, although the Board stated that "it would have been comfortable ordering Respondent to pay the Tenant's full relocation costs based on Respondent's refusal to cure defects with the Premises for over a year." HBR Decision ¶ 16. The Board explained its reasoning as follows:

> [T]he Board defers to the City's code enforcement officers' wisdom and experience in these matters, and will therefore order that Respondent is responsible for only half such costs. Although the Board is sympathetic to the fact the Tenant broke the Premises' windows, and that they were previously broken by the Tenant and replaced, Respondent is ultimately responsible for the condition of

---

[2] Evidence was introduced that Mills' family took responsibility for the broken windows in 2023.

the Building. Given that the original term of the lease is expired so that the lease is now continuing on a month-to-month basis, and because it is undisputed that the Tenant caused the damage in question, the Board is not persuaded that Respondent is without effective legal remedies to address the situation.

*Id*.

Mills appeals from the Board's decision to divide the relocation costs between him and the owner, arguing that the B.C.O. requires that either the owner or the tenant pay these costs, but that there is no authority allowing the Board to split the costs between them.[3]

Discussion

Mills appealed the Board's decision pursuant to Rule 74, "which governs appeals from governmental agencies when the right to appeal is given by statute." *In re Soon Kwon*, 2011 VT 26, ¶ 6, 189 Vt. 598 (mem.) (quoting *Conservation Law Found. v. Burke*, 162 Vt. 115, 125, 645 A.2d 495, 501 (1983)). Rule 74 appeals are "on the record and not de novo." *Id*. (quotation omitted). When reviewing a decision by the Board, this Court conducts an on-the-record review of the evidence that was presented; it applies a "deferential standard of review" and "reviews to determine whether the Board made legal errors or findings unsupported by the evidence." *Ramos v. Niquette*, No. 2020-059, 2020 WL 4731891, at *1 (Vt. Aug. 2020) (unpub. mem.) (citing *Soon Kwon*, 2011 VT 26, ¶ 6). "[O]ut of respect for the expertise and informed judgment of agencies, and in recognition of [the court's] proper role in the separation of powers, [the court] appl[ies] a deferential standard of review to agency decisions." *In re Williston Inn Grp.*, 2008 VT 47, ¶ 11, 183 Vt. 621 (mem.) (quotations and citations omitted). In addition, the Court does not "reweigh the evidence or assess the credibility of witnesses" because that is the province of the Board as the trier of fact. *Sweet v. Pierre*, 2018 VT 122, ¶ 13, 209 Vt. 1 (citation omitted).

Burlington's Code of Ordinances addresses the payment of a tenant's relocation costs in two different sections, 18-20(f) and 18-28(a). Section 18-20 is titled "Suspension and revocation of certificate," and it addresses the effect on tenants of the suspension or revocation of a certificate of compliance that affects their rental unit:

> (f) *Protection of tenants during suspension or revocation.* If, in the judgment of the board, it is necessary for the tenants of a rental unit to be relocated during the effectiveness of any suspension/revocation ordered, the owner shall be financially responsible to pay for the cost of such relocation to comparable housing that meets code requirements during the relocation, as those costs are defined in Section 18-28. . . .

B.C.O. § 18-20(f). Section 18-28(a) is titled "Relocation services," and it provides, in relevant part, as follows:

---

[3] Mills raised other issues in his appeal as well, but the only issue that remains unresolved is the Board's decision regarding relocation expenses.

(a) In the event that any person is displaced from a dwelling or dwelling unit by enforcement of this chapter, including, but not limited, to any suspension or revocation of a certificate pursuant to Section 18-20 unless it is clearly determined by the enforcing agency that the tenant is responsible for the circumstance(s) that led to the order for relocation, the owner shall be responsible for paying the costs of relocation of the displaced person or persons.

B.C.O. 18-28(a). As the City notes, these sections do not address the issue of payment of relocation costs where, as here, both landlord and tenant bear responsibility for the circumstances that caused the certificate of compliance to be suspended or revoked.

In addition to the broken windows, the Board found trash had accumulated outside Mills' unit and that the owner's Certificate of Compliance had expired. Mills does not dispute that he is responsible for the broken windows, and no allocation of fault was made for the accumulation of trash outside Mills' unit.[4] The Board found that the owner is ultimately responsible for the condition of the building[5] and that the owner has legal remedies available to it, *i.e.*, eviction proceedings, if it is unable to maintain the building's compliance with the B.C.O.'s habitability requirements with Mills as a tenant. Based on the evidence before the Board that both Mills and the owner bore some degree of fault for the requirement that Mills be relocated, the Board reasonably decided to follow the recommendation of the City's code enforcement officers that Mills and the owner should split the relocation costs between them.

Contrary to Mills' argument, nothing in the B.C.O. precludes the Board from ordering that the tenant and the owner split the cost of relocation. The evidence before the Board was that both Mills and the owner were responsible for Mills' relocation because the unit in its current condition was in violation of the City's habitability standards, and Mills was responsible for the broken windows. As discussed above, this Court "employ[s] a deferential standard of review of an agency's interpretation and application of its own regulations." *Soon Kwon*, 2011 VT 26, ¶ 6 (quotation omitted). Thus, "absent compelling indication of error," the Court affirms the Board's decision. *Williston Inn Grp.*, 2008 VT 47, ¶ 12; s*ee also Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 10, 179 Vt. 214 ("Absent compelling indications of error, interpretations of administrative regulations or statutes by the agency responsible for their execution will be sustained on appeal.").

Order

For the foregoing reasons, the decision of the Burlington Housing Board of Review is AFFIRMED. Mills' motion to strike Lawrence & LeClair, Inc.'s appellate brief (Mot. # 4) is DENIED.

---

[4] A certificate of compliance will not be issued for a property "which is littered with rubbish or garbage." B.C.O. § 18-19(g)(7).

[5] The Code's minimum standards require owners to maintain the condition of windows to prevent wind and water from entering the dwelling. B.C.O. § 18-73.

Electronically signed on June 17, 2026 at 4:09 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge